# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

WILLIE DILLON                                                    CIVIL ACTION

VERSUS                                                          NO. 19-13593

GERRY GOODWIN, WARDEN                                SECTION "D" (2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]   For the following reasons, I recommend that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.     FACTUAL BACKGROUND

Petitioner Willie Dillon is a convicted inmate incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2]   On February 8, 1999, Dillon was charged by bill of information in Orleans Parish with molestation of a juvenile, D.M.[3]   Dillon pled not guilty to the charge on February 12, 1999.[4]

---

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.   *Id*. § 2254(e)(2)(B).

[2] ECF No. 1, at 1.

[3] State Record (hereinafter "St. R.") Vol. 1 of 4, Bill of Information, 2/8/99.   Pursuant to LA. REV. STAT. ANN. § 46:1844(W), the state courts identify a juvenile victim and family by initials.   I will do the same.

[4] St. R. Vol. 1 of 4, Min. Entry, 2/12/99.

The Louisiana Fourth Circuit Court of Appeal summarized the facts established at trial as

follows:

> Officer Micheleen Scott testified that on November 25, 1998, she investigated a complaint of molestation of a juvenile. She spoke with the victim, D.M., and her mother, and because of those conversations decided to have the child transported to the hospital. Officer Scott further testified that her investigation culminated in the defendant's arrest.
>
> Cynthia Caron, a nurse in the pediatric emergency room at University Hospital, testified that she is assigned to triage patients. When the victim arrived at the hospital, Ms. Caron received information from the police that the child was brought in to rule out sexual abuse.
>
> G.M., the victim's mother, testified that the defendant is her ex-husband and the father of two of her three children. The defendant is not the father of the victim. Ms. M. explained that she works nights and that the defendant took care of the children while she was at work. On November 25, 1998, the victim told her that the defendant touched her "private part", and then demonstrated what the defendant did to her. The victim straddled her and, without touching her mother, indicated that the defendant touched her as if cleaning her, and then put his finger to her nose and said "cheesy, huh?" Ms. M[.] explained that the victim had a bed-wetting problem, but that if she did have an accident, the victim was taught to clean herself. Ms. M[.] did not request, nor authorize the defendant, to clean the victim.
>
> D.M., the victim, testified that she is in the third grade. The defendant is not her father, but she refers to him as "Dad". She stated that the first time the defendant touched her, she had wet herself and he cleaned her off. The second time, she fell asleep downstairs and the defendant took her upstairs and put her in her mother's bed. She had not wet herself but the defendant removed her clothes and proceeded to clean her with a towel. He then held the towel to her nose and said "cheesy, huh?" While she testified, she demonstrated the defendant's actions using a doll. After the incident was over, she went downstairs to her brother. Later, while at her uncle's house, she told her mother what the defendant did. She stated that she spoke to the police, and went to the hospital to be checked for infection. She was hurting because the defendant "stuck the towel deep down" in her private part.
>
> W.M., the victim's brother, testified that the defendant was his father. He remembered the night the defendant did something to his sister. She came downstairs wearing only a T-shirt and her underpants. She was nervous, and shaking with her legs closed. He knew something was wrong and tried to call his mother at work, but the line was busy. He and the victim slept together that night

2

so he could protect her because he "thought [the defendant] was gonna do something else to her, like do the same thing again."[5]

Dillon went to trial before a jury on April 1, 1999.[6]   The jury found Dillon guilty as charged.[7]   On June 15, 1999, the state trial court sentenced Dillon to 10 years in prison at hard labor.[8]   The court denied Dillon's motion to reconsider the sentence.[9]   Dillon also entered a not guilty plea to the State's multiple offender bill charging Dillon as a third felony offender.[10]   At a June 17, 1999, hearing, the state trial court adjudicated Dillon as a third felony offender.[11]   The court vacated the original sentence and resentenced Dillon as a third offender to life in prison at hard labor.[12]   The court also denied Dillon's motion to reconsider the sentence.[13]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Dillon's appointed counsel asserted three errors:

(1)     The evidence was insufficient to demonstrate a specific intent to arouse sexual desire;

(2)     The state trial court erred when it denied the defense's motion for mistrial after the State intentionally elicited testimony that Dillon was in jail for a parole violation when he was arrested for this offense; and,

---

[5] *State v. Dillion*, 770 So. 2d 13, 16-17 (La. App. 4th Cir. 2000); St. R. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2175, at 1-3, 9/6/00.   The state appellate court misspelled Dillon's name as "Dillion" in the caption of its opinion.

[6] St. R. Vol. 1 of 4, Trial Mins., 4/1/99; St. R. Vol. 2 of 4, Trial Tr., 4/1/99.

[7] St. R. Vol. 1 of 4, Trial Mins., 4/1/99.

[8] St. R. Vol. 1 of 4, Sentencing Mins., 6/15/99; St. R. Vol. 2 of 4, Sentencing Tr., at 4, 6/15/99.

[9] St. R. Vol. 1 of 4, Sentencing Mins., 6/15/99; *id*., Motion to Reconsider Sentence, 6/16/99; *id*., Trial Court Order, 6/18/99; St. R. Vol. 2 of 4, Sentencing Tr., at 4, 6/15/99.

[10] St. R. Vol. 1 of 4, Sentencing Mins., 6/15/99; *id*., Multiple Bill, 6/15/99; St. R. Vol. 2 of 4, Sentencing Tr., at 4-5, 6/15/99.

[11] St. R. Vol. 1 of 4 , Multiple Bill Hearing Mins., 6/17/99; St. R. Vol. 2 of 4, Multiple Bill Hearing Tr., at 5, 6/17/99.

[12] St. R. Vol. 1 of 4, Multiple Bill Hearing Mins., 6/17/99; St. R. Vol. 2 of 4, Multiple Bill Hearing Tr., at 5-6, 6/17/99.

[13] St. R. Vol. 1 of 4, Multiple Bill Hearing Mins., 6/17/99; St. R. Vol. 2 of 4, Multiple Bill Hearing Tr., at 6, 6/17/99.

(3)     The life sentence is excessive.[14]

The Louisiana Fourth Circuit granted Dillon leave to file a supplemental pro se brief, but he did not do so.[15]

On September 6, 2000, the Louisiana Fourth Circuit affirmed Dillon's conviction and sentence.[16]   The court found no merit to the claims.   On its errors patent review, the court also declined to correct the illegally lenient sentence imposed without restrictions on parole, probation, or suspension of sentence, because the issue was favorable to the defendant and not asserted by either party.[17]

On September 14, 2001, without stated reasons, the Louisiana Supreme Court denied the writ application filed by Dillon's appointed counsel.[18]   Dillon did not file an application for writ of certiorari with the United States Supreme Court within ninety (90) days, and thus, his convictions and sentences became final on December 13, 2001.[19]

On June 16, 2003, Dillon filed with the state trial court a pro se application for post-conviction relief asserting two claims:

(1)     He was denied due process and equal protection when the petit jury was selected in a discriminatory manner and not drawn from a fair cross-section of the community; and

---

[14] St. R. Vol. 2 of 4, Appeal Brief, 99-KA-2175, 9/20/99.

[15] St. R. Vol. 1 of 4, 4th Cir. Order, 99-KA-2175, 12/2/99.

[16] *Dillion*, 770 So. 2d at 21; St. R. Vol. 2 of 4, 4th Cir. Opinion, 99-KA-2175, at 13, 9/6/00.

[17] *Id.* at 16-17; St. R. Vol. 2 of 4, at 3.

[18] *State v. Dillon*, 797 So. 2d 50 (La. 2001); St. R. Vol. 2 of 4, La. Sup. Ct. Order, 2000-K-2815, 9/14/01; *id.*, La. Sup. Ct. Writ Application, 2000-K-2815, dated 10/6/00.

[19] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); Sᴜᴘ. Cᴛ. R. 13(1).

(2)     He was denied effective assistance of counsel when counsel failed to challenge the historic systemic abuse and discrimination in the use of the prosecutor's peremptory exceptions to exclude jurors on the basis of race.[20]

Dillon referred to this as his second application.   He apparently believed he had filed the same application on August 22, 2002, but the state trial court had no record of receiving it and this record does not reflect an earlier filing.

On November 4, 2003, the state trial court ordered the State to reply to the application and Dillon to provide reasons for his failure to assert his claims on appeal or in prior proceedings.[21] In response, on November 24, 2003, Dillon filed supplemental claims asserting ineffective assistance of trial and appellate counsel:

(1)     ineffective assistance of counsel for failure to investigate and prepare an adequate defense and impeach the victim's mother who was the State's key witness;

(2)     ineffective assistance of counsel for failure to object to the selection of a majority Caucasian jury; and

(3)     ineffective assistance of counsel for his failure to request review of the entire record for errors patent.[22]

On December 4, 2003, the state trial court denied the application finding Dillon failed to provide reasons for his failure to assert his claims in prior proceedings.[23]   In a December 17, 2003, letter, Dillon urged the state trial court to consider his November 24, 2003, response adequate for review

---

[20] St. R. Vol. 1 of 4, Application for Post-Conviction Relief, 6/19/03 (dated 6/16/03); Memorandum in Support, at 5-6, 6/19/03.
[21] St. R. Vol. 1 of 4, Minute Entry, 11/4/03.
[22] St. R. Vol. 1 of 4, Response to Trial Court's Judgment of 11/4/03, 12/1/03 (dated 11/24/03).
[23] St. R. Vol. 1 of 4, Minute Entry, 12/4/03; *see also id*., Minute Entry, 11/4/03 (ordering reply from Dillon).

of his claims.[24]   By letter dated January 6, 2004, the state trial court's staff advised Dillon that he had appropriate time to reply to the order and the time to raise his objection had expired.[25]

More than four years later, on July 11, 2008, Dillon through counsel filed a motion to reopen and reconsider the 2003 application for post-conviction relief.[26]   The court set the motion for hearing as a second application for post-conviction relief.[27]   On December 15, 2009, Dillon's counsel filed a second motion to reopen or alternatively to vacate the judgment on the 2003 application.[28]   After years of continuances, at an April 29, 2013, hearing, the state trial court denied the motion/application as repetitive, citing LA. CODE CRIM. PROC. art. 930.4.[29]

On June 21, 2013, the Louisiana Fourth Circuit denied Dillon's counsel-filed writ application on the showing made.[30]   The Louisiana Supreme Court denied Dillon's related writ application on May 23, 2014, for seeking untimely post-conviction relief, citing LA. CODE CRIM PROC. art. 930.8 and *State ex rel. Glover v. State*, 660 So. 2d 1189 (La. 1995).[31]

Five years later, on May 28, 2018, Dillon filed a motion to correct his multiple offender sentence based on changes to Louisiana's habitual offender sentencing laws in 2001, which changes reduced the exposure for certain third felony offenders.[32]   Dillon through counsel

---

[24]  St. R. Vol. 1 of 4, Letter to the Court, dated 12/17/03.
[25]  St. R. Vol. 1 of 4, Letter from the Court, 1/6/04.
[26]  St. R. Vol. 3 of 4, Docket Entry, 7/11/08.
[27]  *Id*.
[28]  *Id*., Docket Entry, 12/15/09; St. R. Vol. 4 of 4, Motion to Reopen and Reconsider (copy not dated).
[29]  St. R. Vol. 3 of 4, Docket Entry, 4/29/13; St. R. Vol. 4 of 4, Hearing Transcript, at 12, 4/29/13.
[30]  St. R. Vol. 3 of 4, 4th Cir. Order, 2013-K-0815, 6/21/13; St. R. Vol. 4 of 4, 4th Cir. Writ Application, 2013-K-815, 6/11/13.
[31]  *State ex rel. Dillon v. State*, 140 So. 3d 723 (La. 2014); St. R. Vol. 4 of 4, La. S. Ct. Writ Application, 13-KH-2519, 10/29/13 (dated 9/18/13).   In *State ex rel. Glover*, the Louisiana Supreme Court determined that a higher court could find post-conviction application untimely under LA. CODE CRIM. PROC. art. 930.8 even if timeliness was not addressed in the lower courts.   *State ex rel. Glover*, 660 So. 2d at 1189.
[32]  St. R. Vol. 3 of 4, Motion to Correct an Illegal Sentence, dated 5/28/18.

supplemented the motion on September 17 and November 2, 2018, with additional argument and reference to LA. REV. STAT. ANN. § 15:308(B) and *State ex rel. Esteen v. State*, 239 So. 3d 233 (La. 2018), in which the Louisiana Supreme Court mandated resentencing for multiple offenders whose sentences were for terms no longer authorized by Louisiana's habitual offender law.[33]   At a November 9, 2018, hearing, the state trial court denied the motion and found that the 2001 revision to the habitual offender law did not impact Dillon's sentence.[34]

On February 13, 2019, the Louisiana Fourth Circuit denied Dillon's counsel-filed writ application on the basis that Dillon did not qualify for resentencing under the 2001 revisions to the habitual offender laws.[35]   The Louisiana Supreme Court denied Dillon's counsel-filed writ application without stated reasons on June 17, 2019.[36]

## II.     FEDERAL HABEAS PETITION

On November 12, 2019, the Clerk of Court filed Dillon's petition for federal habeas corpus relief.   Dillon asserts that he is entitled to resentencing under the Louisiana Supreme Court's holding in *State ex rel. Esteen* which made the more lenient sentencing provisions in LA. REV. STAT. ANN. § 15:308(B) retroactively applicable to third offenders.[37]

The State filed a response in opposition to Dillon's petition conceding timeliness and exhaustion.[38]   The State also asserts that Dillon's claim is not cognizable on federal habeas review

---

[33] St. R. Vol. 3 of 4, Supplemental Memorandum, 9/17/18; Supplemental Memorandum in Support of Resentencing, 11/2/18.
[34] St. R. Vol. 3 of 4, Hearing Transcript, at 4-5, 11/9/18.
[35] St. R. Vol. 3 of 4, 4th Cir. Order, 2019-K-0075, 2/13/19; *id*., 4th Cir. Writ Application, 2019-K-0075, 1/23/19.
[36] *State v. Dillon*, 274 So. 3d 1279 (La. 2019); St. R. Vol. 4 of 4, La. S. Ct. Order, 2019-KK-0417, 6/17/99; St. R. Vol. 4 of 4, La. S. Ct. Writ Application, 19-KK-417, 3/14/19.
[37] ECF No. 1, at 5.
[38] ECF No. 16.

because his claims are based solely on state law.   Dillon notified the court that he is unable to file

a reply to the State's opposition because of the jails Covid-19 restrictions have limited his access

to legal assistance.[39]   I find that the record is sufficient to address Dillon's petition without further

response from him.

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28

U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996,[40] and applies to habeas petitions

filed after that date.[41]   Dillon's petition is deemed filed on November 4, 2019.[42]

### A.   Preliminary Considerations

The threshold questions in habeas review under the amended statute are whether the

petition is timely and whether petitioner's claims were adjudicated on the merits in state court.   In

other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural

default" on a claim.[43]   The State does not address a procedural default, and none is apparent from

---

[39] ECF No. 18.

[40] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[41] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[42] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.   *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court received Dillon's petition on November 6, 2019, and filed it on November 12, 2019.   Dillon signed the form petition on November 4, 2019. ECF No. 1, at 15.   This is the earliest indication appearing in the record of the date on which he could have presented his pleadings to prison officials for mailing to a federal court.   Payment of the filing fee does not alter the application of the federal mailbox rule.   *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[43] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

the record.   The State concedes and the record shows that Dillon exhausted state court review.

The State also indicates that Dillon's federal habeas petition is timely filed because it was filed

within one year of the finality of his motion to correct his sentence.[44]   The State's conclusion as

to timeliness is correct, but its reasoning is legally flawed.

Timeliness of a federal petition does not run from conclusion of state court post-conviction

review.[45]   The statute of limitations provision of the AEDPA codified at 28 U.S.C. § 2244(d)

provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.   The
> limitation period shall run from the latest of—
>> A.  the date on which the judgment became final by the conclusion of direct
>>     review or the expiration of the time for seeking such review;
>> B.  the date on which the impediment to filing an application created by
>>     State action in violation of the Constitution or laws of the United States
>>     is removed, if the applicant was prevented from filing by such State
>>     actions;
>> C.  the date on which the constitutional right asserted was initially
>>     recognized by the Supreme Court, if the right has been newly
>>     recognized by the Supreme Court and made retroactively applicable to
>>     cases on collateral review; or
>> D.  the date on which the factual predicate of the claim or claims presented
>>     could have been discovered through the exercise of due diligence.

Dillon's conviction was final on December 13, 2001.   He therefore would have had until

December 13, 2002, to file a federal petition, which he did not do.   His petition filed November

14, 2019, is woefully untimely unless it meets one of the other provisions under § 2244(d).   But

Dillon's resentencing efforts arguably were triggered by a new factual predicate, the Louisiana

Supreme Court's January 30, 2018, decision in *State ex rel. Esteen*.   This decision provided

---

[44] ECF No. 16, at 5-6.
[45] The one-year limitations period does not begin anew at the completed of post-conviction review. *Flanagan*, 154 F.3d at 199 n.1.

retroactive application of changes to Louisiana's habitual offender sentencing laws under which Dillon was sentenced. The retroactive application apparently was the impetus behind Dillon's 2018 motion to correct his sentence. As a factual predicate for the claims, under §2244(d), Dillon had one year from the issuance of that opinion to seek federal relief.

The one-year period was tolled during the pendency of Dillon's properly filed state court post-conviction or other collateral review proceedings.[46] A motion to correct a sentence is considered "other collateral review" for purposes of § 2244 limitations.[47] Dillon filed the motion to correct his sentence on May 28, 2018, which was 117 days after the *Esteen* ruling was issued. His motion to correct remained pending through completion of review on June 17, 2019, when the Louisiana Supreme Court denied his related writ application. Dillon's federal petition was filed 139 days later on November 4, 2019. His petition, therefore, was timely filed well-within the one-year AEDPA limitations period.

**B.    Dillon's Claim**

**1.   Standards of a Merits Review**

Tile 28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[48] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination

---

[46] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d 303, 310 (5th Cir. 2000) (a matter is "pending' for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

[47] *Sampia v. Cain*, 48 F. App'x 916, 2002 WL 31114916, at *4 (5th Cir. Sep. 9, 2002).

[48] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

of the facts in light of the evidence presented in the State court proceeding.'"[49]   The statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear

and convincing evidence" burden placed on a petitioner who attempts to overcome that

presumption.   28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are

reviewed under 28 U.S.C. § 2254(d)(1).   The determination receives deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly established

[Supreme Court precedent.]'"[50]   The United States Supreme Court has clarified the § 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.   Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.[51]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available

under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly

established rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question."[52]   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts

---

[49] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

[50] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[51] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[52] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[53]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[54]   Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[55]   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[56]

### 2.   Claim: Retroactive Application of Amended State Sentencing Law

Dillon claims that he is entitled to resentencing based on the Louisiana Supreme Court's decision in *State ex rel. Esteen,* which made the 2001 changes to the Louisiana habitual offender laws retroactively apply to third felony offenders like him.   As indicated above, *State ex rel. Esteen*, 239 So. 3d at 233, provided that multiple offenders could request resentencing if the term being served was no longer authorized by Louisiana law.   Broadly construing his arguments, Dillon claims that under the 2001 change in Louisiana's law, he would not have received a life sentence as a third offender.   The state trial court, however, denied his motion to correct his sentence.   In its reasoned opinion, the Louisiana Fourth Circuit determined that, because Dillon's

---

[53] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")
[54] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).
[55] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).
[56] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

crimes supporting the multiple bill were considered crimes of violence, his sentence was proper and was not changed by the 2001 amendments.   This was the last reasoned opinion on the issue by the state courts in light of the Louisiana Supreme Court's summary denial of Dillon's related writ application.[57]

In this petition, Dillon claims that he is entitled to reduction of his sentence, and that the state courts' failure to reduce his sentence violated the retroactive amendment to the sentencing laws and the Louisiana Supreme Court's directive in *State ex rel. Esteen*.   As urged by the State in its opposition response, Dillon's claim that his sentence is contrary to the amended state law is not cognizable in a federal proceeding.   The interpretation or application of a state statute is not cognizable federal issue under § 2254.[58]

Similarly, the state courts' retroactive application of a new judicial interpretation of a criminal statute does not implicate federal due process or ex post facto considerations.[59]   Dillon's claims in this court turn squarely on an issue of state law, which the state courts, including the Louisiana Supreme Court, have decided against him.   This court is not a "super state supreme court."[60]   Thus, "'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"[61]

---

[57] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.")

[58] *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002); *Beasley v. Johnson*, 242 F.3d 248, 261 (5th Cir. 2001).

[59] *Butler v. Cain*, 327 F. App'x 455, 456-57 (5th Cir. Apr. 23, 2009) (citing *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001)).

[60] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotations omitted).

[61] *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Swarthout v. Cooke*, 562 U.S. 216 (2011) (federal habeas courts do not sit to re-examine state court determinations on questions of state law).

Instead, federal habeas review is limited to questions of constitutional dimension which, if proven, establish that "the petitioner is in custody in violation of the Constitution or laws or treaties of the United States."[62]   Review of Dillon's state court pleadings indicates that the claims presented by Dillon and his counsel in the state courts were based entirely on state statutes and case law, not federal law.   Any "'fleeting reference'" by Dillon or his counsel to federal law, including phrases like due process, "within a lengthy state-law focused argument 'does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.'"[63]   Even broadly construed,[64] Dillon's challenge to the interpretation and application of the Louisiana Supreme Court's opinion in *State ex rel. Esteen* and the state habitual offender laws includes "no allegations of federal constitutional violations that might conceivably support federal habeas relief."[65]   As Dillon's claims are based entirely on a question exclusively governed by state law without invocation of federal law, he is not entitled to federal habeas review or relief on this issue.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Dillon's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[62] 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68.

[63] *Norris v. Davis*, 826 F.3d 821, 831 (5th Cir. 2016) (quoting *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001)).

[64] The state court pleadings filed by Dillon's counsel do not require liberal construction.   *United States v. Broussard*, 675 F. App'x 454, 457 (5th Cir. Jan. 13, 2017) (counsel filed pleadings are not entitled to liberal interpretation); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)) (same).

[65] *See Dennis v. Louisiana*, No. 14-2780, 2015 WL 4910631, at *5 (E.D. La. Jul. 20, 2015) (petitioner's claim that state courts misapplied Louisiana Supreme Court case on retroactivity of a sentencing statute was not cognizable under § 2254 when neither the federal petition nor state court review relied on federal constitutional grounds.)

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[66]

New Orleans, Louisiana, this _____19th_____ day of November, 2020.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[66]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).   *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).